1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8
9

| | |
|---|---|
| DARRYL D. WEBB,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>          Defendant. | CASE NO. 2:15-cv-00187 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 10, 13, 14).

After considering and reviewing the record, the Court concludes that the ALJ failed to provide specific and legitimate reasons for her failure to credit fully the medical opinion of Dr. Robert Parker, PhD. Although the ALJ found that Dr. Parker provided

opinions without referencing his objective findings or including a rationale to support his ratings, the opinion of Dr. Parker clearly indicates his objective findings and the rationale supporting his opinions of plaintiff's limitations. Therefore, the ALJ's findings are not supported by substantial evidence in the record as a whole.

As a consequence, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff, DARRYL D. WEBB, was born in 1962 and was 49 years old on the amended alleged date of disability onset of October 18, 2011 (*see* AR. 10, 32, 198-99, 200-05). Plaintiff has his GED (AR. 35). Plaintiff's work history consists of detailing cars, temporary labor jobs and landscaping work (AR. 36-37). Plaintiff's last employment was detailing cars and that job ended when the business was closed (AR. 35-36).

According to the ALJ, plaintiff has at least the severe impairments of "chronic obstructive pulmonary disease (COPD)/asthma; history of deep vein thrombosis and edema; obesity; depression; anxiety disorder; alcohol abuse in reported remission; and personality disorder (20 CFR 404.1520(c) and 416.920(c))" (AR. 12).

At the time of the hearing, plaintiff had been living out of his car for five years, and the last two years with his girlfriend (AR. 34-35).

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 65-79, 80-94, 97-112, 113-28). Plaintiff's requested hearing was held before Administrative Law Judge Stephanie Martz ("the ALJ") on September 4, 2014 (*see* AR. 29-62). On October 23, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 7-28).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ correctly rejected the medical and testimonial evidence pertaining to plaintiff's physical impairments; (2) Whether or not the ALJ correctly rejected the medical and testimonial evidence pertaining to plaintiff's mental health impairments; and (3) Whether or not the ALJ met her burden of showing that there were other jobs in the national economy that plaintiff could perform at step five (*see* Dkt. 10, p. 2). Because issue number two is dispositive and encompasses reversible errors of the ALJ, that issue will be discussed exclusively and the ALJ is directed to revaluate the entire record on remand.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Whether or not the ALJ correctly rejected the medical and testimonial evidence pertaining to plaintiff's mental health impairments**.

Plaintiff contends that the ALJ erred when evaluating evidence pertaining to plaintiff's mental health impairments and limitations, including the medical opinion of Dr. Robert Parker, PhD. Defendant contends that there was no error in the ALJ's evaluation of Dr. Parker's opinion.

When an opinion from an examining doctor is contradicted by other medical opinions, the examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Both medical doctors and doctors of psychology are acceptable medical sources who provide medical opinions in the Social Security context. *See, e.g.*, 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").Dr. Parker examined plaintiff on October 18, 2011, plaintiff's amended alleged onset date of disability (*see* AR. 339-47). Dr. Parker reviewed some of plaintiff's medical records, noting that the medical report on file dated

1    October 15, 2011 included a diagnosis for plaintiff of "asthma/COPD 'significant;' and a

2    diagnosis for depression"(AR. 343). Dr. Parker also reviewed a medical report from July

3    28, 2011, noting that plaintiff also was diagnosed with depression on this date (*see id.*).

4    However, Dr. Parker did not review psychological records because there were no

5    psychological reports available from the Department of Social and Health Services

6    ("DSHS") at the time of his evaluation (*see id.*). Dr. Parker additionally performed a

7    formal mental status examination ("MSE") (AR. 345-47).

8
       Dr. Parker noted numerous objective abnormal findings during his examination of

9
     plaintiff, such as that plaintiff presented as unkempt, unshaven, with body odor and

10
     demonstrating poor hygiene (AR. 345). He noted that plaintiff's clothing was dirty, torn,

11
     and odorous (*see id.*). Regarding plaintiff's motor behavior, Dr. Parker observed that

12
     plaintiff was very lethargic (*see id.*). Regarding plaintiff's behavior, expression, and

13
     attitude, Dr. Parker noted multiple abnormal findings including that plaintiff was tearful,

14
     frowning, uncomfortable, and passive (*see id.*). Regarding Dr. Parker's opinion of

15
     whether or not there was any objective evidence of malingering, Dr. Parker found that

16
     there was no such suggestion, further indicating that plaintiff appeared "straightforward,

17
     honest, disclosing and generally consistent" (*see id.*).

18
       In the only finding included in the MSE that was indicated specifically as

19
     "described by plaintiff," Dr. Parker noted that plaintiff indicated that he was depressed,

20
     and felt helpless, worthless, pessimistic, hopeless and discouraged (*see id.*). Dr. Parker

21
     provided his objective observation that plaintiff's mood appeared depressed, discouraged

22
23   and hopeless; that his affect appeared flat; and, that his mood and affect were consistent

24

1  with each other (*see id.*). Dr. Parker also observed that plaintiff was nervous, tense,

2  fearful, and worried (*see id.*). Dr. Parker observed that plaintiff's thought content

3  revealed a paranoid ideation (*see id.*).

4        When testing plaintiff's memory, Dr. Parker noted that plaintiff demonstrated

5  good immediate recall of three words, however demonstrated poor delayed recall of three

6  words, as he could not remember any of the three words after a short delay (AR. 346).

7  Similarly, although plaintiff demonstrated a good forward digit span, plaintiff only

8  correctly recalled four digits during the digit span backward test, indicating fair

9  performance (*see id.*).

10        When testing plaintiff's concentration, Dr. Parker noted that plaintiff, when

11  counting backward, only got three out of five numbers correct (*see id.*). Dr. Parker

12  indicated that this performance on this concentration task was poor, although he noted

13  that plaintiff demonstrated good performance on some of the other concentration tasks,

14  and adequate performance spelling "world" backwards, although only after two attempts

15  (*see id.*). With explicit direction, plaintiff was able to perform a simple three step

16  command, in that he was able to take a piece of paper in his right hand folded in half and

17  put it on the floor when instructed to do so (AR. 347).

18        Dr. Parker diagnosed plaintiff with major depressive disorder, recurrent episode,

19  severe without psychotic features; PTSD, chronic; cognitive disorder NOS; and

20  polysubstance dependence versus abuse, active (AR. 340). Although Dr. Parker opined

21  that there was an indication of current or recent alcohol or substance use, he opined that

alcohol or drug treatment would not be likely to improve plaintiff's ability to function in a work setting (AR. 341).

Dr. Parker opined that plaintiff had marked limitations in his ability to learn new tasks, indicating that this opinion was based on his observation of plaintiff's severe depression, anxiety, PTSD, and short-term memory (AR. 341). Marked limitations are defined on the form as "fairly significant interference" (*see id.*). Dr. Parker opined that plaintiff suffered from severe limitation in his ability to perform routine tasks without undue supervision, noting that this opinion was based on his observation of plaintiff's severe depression, anxiety, PTSD, and short-term memory (*see id.*). On this form, severe limitation is defined as "inability to perform one or more basic work-related activities" (*see id.*). Dr. Parker also opined that plaintiff suffered from severe limitation in his ability to maintain appropriate behavior in a work setting, noting that this opinion was based on his observation of plaintiff's severe depression, anxiety, PTSD, short-term memory, and paranoid ideation (*see id.*).

The ALJ gave little weight to Dr. Parker's opinions with a finding that "Dr. Parker opined the claimant has various marked and severe limitations without referencing his objective findings or including a rationale to support these ratings (AR. 20 (*citing* AR. 341)). However, this finding by the ALJ is directly opposite to the record, as Dr. Parker specifically indicated that his opinions of marked and severe limitations were based on his observation of plaintiff's severe depression, anxiety, PTSD, and short-term memory, and for some of his opinions, of plaintiff's paranoid ideation (AR. 341). In fact, Dr. Parker twice provided his objective findings and his rationale to support his assessed

limitations, as on the previous page Dr. Parker specifically indicated that he observed plaintiff's depression; opined that it would have a severe effect on plaintiff's work activities; and specifically described how plaintiff's depression would affect work activities in that it would impair plaintiff's "focus, concentration, initiative, motivation, task persistence and completion," and would result in fatigue (AR. 340). Similarly, Dr. Parker indicated that he observed plaintiff's anxiety, opined that it would have a severe effect on plaintiff's work activities; and specifically described how plaintiff's anxiety would affect his work activities in that it resulted in distractibility; and that it impairs plaintiff's "attention, focus, efficiency and effectiveness" (*see id.*). Dr. Parker also indicated that he personally observed plaintiff's lethargy; opined that it would have a marked effect on plaintiff's work activities; and specifically described how plaintiff's lethargy would affect plaintiff's work activities in that it "impairs efficiency, [and] reduces task performance and timely task completion" (*see id.*). Likewise, Dr. Parker specifically indicated that he personally observed plaintiff's difficulties with short-term memory; opined that this symptom would have a marked effect on plaintiff's work activities; and specifically described how plaintiff's short-term memory problem would affect his work activities in that it caused forgetfulness; and "impairs following directions and staying on task" (*see id.*). Finally, Dr. Parker indicated that he specifically observed plaintiff's paranoid ideation; opined that it would have a markedly severe effect on plaintiff's work activities; and specifically described how plaintiff's paranoid ideation would affect his work activities in that it "increases risk of conflict; [and causes] difficulties getting along with others and possible unpredictable behavior" (*see id.*).

Therefore, based on the record, the Court concludes that the ALJ's finding that Dr. Parker did not reference "his objective findings or including a rationale to support these ratings" is not based on substantial evidence in the record as a whole, and also suggests that the ALJ failed to thoroughly reviewed Dr. Parker's opinion, which the Court notes is only nine pages long (AR. 20 (*citing* AR. 341)).

Although the ALJ indicates that there are no objective findings to support Dr. Parker's opinion that plaintiff is unable to learn new tasks, the ALJ provides one of the objective findings in support of this opinion herself, noting that plaintiff had poor delayed memory (AR. 20). In fact, plaintiff was unable to correctly recall any of three objects after a delay (AR. 346-347). In addition, the record reflects that other objective findings from Dr. Parker's MSE of plaintiff support his opinion, in that plaintiff's concentration test of counting backwards resulted in plaintiff only getting three out of five numbers correct, an objective finding that Dr. Parker opined was a "poor" result (AR. 346). Other objective finding support Dr. Parker's opinion, including plaintiff's lethargy, tearfulness, depressed mood, nervousness, and fearfulness (AR. 345).

The ALJ also found that subsequent evaluations do not reflect that plaintiff had significant problems understanding medications, keeping appointments, or that he needed significant assistance in order to comply with medical treatment (AR. 20). However, Dr. Parker did not opine that plaintiff had significant problems understanding medications, or keeping appointments, but in fact opined that plaintiff "appears able to participate in a treatment/therapy program" (AR. 341). Dr. Parker obviously thought that this finding was not inconsistent with his opinions of plaintiff's limitations, and the ALJ did not explain

why her own interpretations, rather than those of Dr. Parker, are correct. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)) ("the ALJ must explain why her own interpretations, rather than those of the doctors, are correct"). Regarding the ALJ's comment that subsequent evaluations do not reflect that plaintiff required significant assistance in order to comply with medical treatment, the ALJ herself found that plaintiff failed "to follow through with treatment recommendations" (AR. 18), but also concluded without explanation that plaintiff could follow through, but chooses not to do so (AR. 16).

The ALJ also found that "Dr. Parker did not review any of the claimant's records," however, again, this finding is directly contradicted by the record which indicates that Dr. Parker reviewed multiple medical records of plaintiff, noting a diagnosis of depression in a medical report dated October 15, 2011, as well as an earlier diagnosis of depression on July 28, 2011 (AR. 343). This finding by the ALJ that "Dr. Parker did not review any of the claimant's records" is not based on substantial evidence in the record as a whole (AR. 21). Although Dr. Parker did not have the ability to review psychological reports from DSHS, the record indicates that was because such records were not provided to him at the time of his evaluation (AR. 343). If the ALJ was unable to evaluate Dr. Parker's opinion without Dr. Parker's review of other psychological records, she had a duty to develop the record and follow up with Dr. Parker, after providing him with such records, to discover whether or not they affected his opinion. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Furthermore, the ALJ's inference from this fact that Dr. Parker unduly relied on plaintiff's subjective statements is not based on substantial evidence in the record as a whole. The form filled out by Dr. Parker specifically indicates that his opinion regarding the degree of limitation should be based "on interpretation of appropriate tests, along with your own observation during the interview" (AR. 341). There is no evidence that Dr. Parker failed to comply with this instruction; and, furthermore, there is evidence that Dr. Parker did comply with this instruction, as he indicated specifically that he observed plaintiff's symptoms of depression, anxiety, lethargy, short-term memory problems, and paranoid ideation, and he performed an MSE (AR. 340). Although the ALJ correctly notes that Dr. Parker only examined plaintiff on one occasion, this is not a legitimate reason for her failure to credit fully all of his opinions, as an ALJ still must provide "specific and legitimate reasons that are supported by substantial evidence in the record" for any failure to credit fully an opinion from a doctor even if he only examined the claimant once. *See Lester, supra*, 81 F.3d at 830-31 (*citing Andrews*, *supra,* 53 F.3d at 1043). In addition, an examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician," and the ALJ failed to credit fully any of the opinions from plaintiff's examining doctors. *See id.* at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1). Instead, the ALJ gave all of the opinions from plaintiff's examining and treating sources "little weight" (AR. 20-21).

Finally, regarding the finding by the ALJ that Dr. Parker relied on plaintiff's presentation during his evaluation, the Court already has noted that the form filled out by Dr. Parker, that was provided by DSHS specifically indicates that Dr. Parker's opinion

ORDER ON PLAINTIFF'S COMPLAINT - 11

regarding the degree of limitation should be based "on interpretation of appropriate tests, along with your own observation during the interview" (AR. 341). Therefore, the fact that Dr. Parker relied on his own observation during the interview is not a legitimate basis for the ALJ's failure to credit fully his opinions.  In addition, the Court also notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports. *Id.* at 4. Therefore, evaluating a patient's presentation is part of the MSE conducted by a psychological doctor and does not constitute a legitimate reason for failing to credit fully Dr. Parker's opinion.

Based on the record as a whole, the Court concludes that the ALJ failed to explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v.*

*Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

The Court also concludes that the ALJ's failure to evaluate Dr. Parker's opinion properly is not harmless error.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 2015 U.S. App. LEXIS 11920 at *7-*8 (9th Cir. July 10, 2015) (*citing Stout,* 454 F.3d at 1055-56). The court further indicated that "the more serious the ALJ's error, the more difficult it should be to show the error was harmless." *Id.* at *9 (*citing Stout,* 454 F.3d at 1056; *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 750 (6th Cir. 2007)). Even though "the district court gave persuasive reasons to determine

ORDER ON PLAINTIFF'S COMPLAINT - 13

1  harmlessness," the Ninth Circuit reversed and remanded for further administrative
2  proceedings, noting that "the decision on disability rests with the ALJ and the
3  Commissioner of the Social Security Administration in the first instance, not with a
4  district court." *Id.* (*citing* 20 C.F.R. § 404.1527(d)(1)-(3)).

The Court concludes that the ALJ's errors in the evaluation of Dr. Parker's opinion were serious. The Court also concludes that these errors affected the ultimate disability determination. If the ALJ had credited fully Dr. Parker's opinion, plaintiff's residual functional capacity would have been different, thus affecting the step five finding that plaintiff could perform other work existing in the national economy. Although the error was not harmless, because "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, [and] not with a district court," the Court concludes that this matter should be reversed and remanded for further administrative proceedings. *Id.* (*citing* 20 C.F.R. § 404.1527(d)(1)-(3)). The ALJ failed to credit fully any of the opinions from any of the treating, examining, or reviewing sources when determining plaintiff's mental residual functional capacity and did not adequately resolve conflicts in the medical evidence. Therefore, the Court concludes that further administrative review would serve a useful purpose. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (citations omitted) (remand for further proceedings is appropriate if further administrative proceedings would be useful).

//

(2) **Whether or not the ALJ correctly rejected the medical and testimonial evidence pertaining to plaintiff's physical impairments**.

Because the ALJ's rationale for failing to credit fully the medical opinion of Dr. Parker was in direct contradiction with the record, the Court concludes that following remand of this matter, the ALJ should evaluate all of the medical opinions anew. Similarly, because the ALJ must reevaluate the medical opinion evidence, as a necessity, the step five finding regarding other jobs in the national economy must be assessed anew.

CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 23rd day of September, 2015.

_____

J. Richard Creatura
United States Magistrate Judge